L. A. Maxwell for use of Clara E. Maxwell et al., Ap-.pellee, v. Walter J. Nieft and J. B. Frederick, De-fendants. J. B. Frederick, Appellant.

Opinion filed March 2, 1942.

J. P. STREUBER, of Alton, for appellant.

WILBUR A. TRARES, of Edwardsville, for appellee.

MR. PRESIDING JUSTICE STONE delivered the opinion of the court.

The question involved in this case is: "May the sureties on the official bond of a constable who have been sued and made to pay a judgment based upon an unlawful act of said constable, sue and recover from the sureties on an indemnifying bond taken by said constable to protect him from damages in and about the doing of said unlawful act"?

This question seems to be entirely new in this State as far as adjudicated cases are concerned. Counsel have cited none in their briefs, nor have we been able to find any case as authority or precedent.

Briefly stated, the facts are substantially as follows: L. A. Maxwell was elected constable of the Township of Wood River in Madison county, Illinois, on the 17th day of April, 1933. He qualified by entering into bond in the sum of $2,000 with Clara E. Maxwell, E. S. Hendricks and August Dietiker as sureties. On the 7th day of February, 1933, Nieft Brothers, doing business under the name of the City Bakery, obtained a judgment against Gus Libas and Nick Koste in the sum of $184.95. Execution was issued against said defendants and delivered to said Maxwell for service. On June 5, 1933, said Maxwell, constable, levied on all the money and stock of merchandise consisting of beer, wines, cigars and so forth, in a place of business at 16 Wood River avenue, Wood River, Illinois, as the property of said defendants Libas and Koste. Maxwell, constable, apparently having a reasonable doubt as to the ownership of the goods on which he had levied, required from Nieft Brothers an indemnifying bond. Said bond was given, executed by Walter J. Nieft and J. B. Frederick in the sum of $400. This bond is the instrument sued on in this case.

Upon receipt of said indemnifying bond Maxwell on the 5th day of June, 1933, levied on the aforesaid goods, wares and merchandise, and sold said property to satisfy said judgment on the 17th day of June, 1933. In the meantime, one George Costopolus served notice in writing upon said constable that he, Costopolus, claimed said property as his own. A trial of the right of property was afterwards had before a justice of the peace, and upon appeal to the circuit court of Madison county judgment was rendered by said court, on the 22nd day of March, 1934, holding that George Costopolus was the owner of the property so levied

upon. No appeal was ever taken from this judgment. It thereby became final.

Costopolus being unable to recover his property brought suit on the official bond of Maxwell, constable. Maxwell was not served, but a trial was had against the sureties on said bond, Clara Maxwell, T. S. Hendricks and August Dietiker. This suit was in the circuit court of Madison. A judgment was rendered by said court on the 28th day of August, 1937, for $1,142.41 and costs. This judgment was appealed to the Appellate Court, and there affirmed. (*People for use of Costopolus v. Maxwell*, 296 Ill. App. 651 (Abst.).) The sureties on the official bond,—that is, the defendants against whom the judgment of $1,142.41 was assessed, paid said judgment on January 5, 1939. These sureties on said official bond thereafter brought suit on the indemnifying bond, making Walter J. Nieft and J. B. Frederick parties defendant. Trial was had in the circuit court of Madison and judgment was rendered against the said defendants in the sum of $400. Defendant appellant J. B. Frederick alone brought this appeal.

Appellant in his answer raises the question of the statute of limitations against the plaintiffs in this suit and urges here that said cause was barred by said statute at the time the action was instituted. With this we are unable to agree, for whether judged from the time that judgment was rendered against appellees or when they were required to pay the amount of the judgment, the accrual of the action, if action they have, accrued well within the five-year statute of limitations. The statute of limitations affects only the remedy and does not commence to run until the party to be barred has a right to invoke the aid of the court to enforce his remedy. *Staninger v. Tabor,* 103 Ill. App. 330; *Suppiger v. Gruaz,* 137 Ill. 216; *Nevitt v. Woodburn,* 160 Ill. 203; *Otter Creek Lumber Co. v. McElwee,* 37 Ill. App. 285. Certainly the plaintiffs

could not have sued until they were injured, and as said above, the injury to them accrued well within the five-year statute of limitations.

Counsel for appellant contends that the facts in this case bring it within the holdings of a class of cases of which *Searles v. City of Flora*, 225 Ill. 167 and *Vial v. Norwich Union Fire Ins. Society*, 257 Ill. 355, are types. An examination of the first case discloses that this was a suit on a bond to the City of Fora by a contractor for the faithful performance of his contract. On failure to pay the subcontractors, they sued on the bond to the City of Flora. The court there held that where a contract for the remodeling of certain buildings in the city runs directly to the city and there is nothing in the bond given in pursuance of the contract to show that it was made for the benefit of third parties, the city cannot after the work is completed and the contractor paid, maintain an action on such bond for the benefit of third persons whom the contractor has failed to pay, even though the contractor agreed in the contract to pay.

The second of these cases holds that the beneficiary of an insurance policy cannot sue the company who reinsured the company in which he was insured on its contract for reinsurance unless the contract of reinsurance specifically gives that right.

Counsel for appellee contends that this case is controlled by *Cherry v. Benson*, 264 Ill. App. 199. In that case the bond specifically provided for the protection of the subcontractors, and, of course, the court held that they were entitled to sue on that bond. Neither of these classes of cases is, in our judgment, persuasive of a decision either way in the case at bar.

There is a vast difference between subcontractors, though the original contractor is under bond, and the sureties on the official bond of a constable. It may be said to go with the constable in every official step that he takes. He could not be a constable without it.

He is an official, of which his official bond is a part; the bond goes with him in all of his official acts. Every time he makes a levy his bond and the sureties thereon enter into it and share the responsibility; every time he makes a sale his sureties are there protecting the one whose property he sells; every time he serves process his official bond goes with him. The sureties on that bond assume every responsibility that the constable takes. It would be an austere rule indeed to hold that the sureties on that bond, assuming the responsibilities at every step of the constable and every act that he does, would not share any protection which the constable, as an official, has.

In 57 Corpus Juris 923, sec. 575, the text writer uses this language:

"Except where otherwise provided by statute, the effect of a bond or a promise of indemnity to a sheriff or a constable against liability resulting from official acts, is not to protect the officer or the sureties on his official bond from direct and primary liability to a person or party injured by his acts, but rather to shield him from ultimate loss by enabling him to revert to the indemnity in case he is subjected to liability. Such right of recourse extends to the surety on the official bond of the officer as well as to the officer himself."

Continuing on page 933, section 593, of the same volume, the writer says:

"Surety on the official bond of a sheriff or constable, who has been compelled to pay out money on account of an act of the officer, as to which he was indemnified, may maintain an action against the indemnitors upon their bond of indemnity."

On these principles the text writer cites *Philbrick v. Shaw,* 61 N. H. 356, and the same title in 63 N. H. 81. This is a case in point. The surety on a constable's official bond sued the surety on the constable's indemnifying bond. There was nothing in that bond which specifically referred to the surety on the con-

stable's official bond. The court held that the plaintiffs were properly subrogated and had a right to bring the action. A suit at law was afterwards instituted and recovery had by the plaintiff. (63 N. H. 81.) The New Hampshire court uses this language:

"Nor was the defendant's bond for the protection of Haynes alone. His sureties were responsible for his official conduct, and equally liable with him to make compensation to any injured party for his wrongful acts. His protection was their protection."

We choose to follow these authorities, not alone because of the standing of the text writer in Corpus Juris, and the high regard we have for the Supreme Court of New Hampshire, but also because those authorities coincide with our own understanding and belief.

In harmony with the above the judgment of the circuit court is affirmed.

*Judgment affirmed.*